UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| STRIKE 3 HOLDINGS, LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>JOHN DOE, SUBSCRIBER ASSIGNED IP ADDRESS 71.202.128.203,<br><br>    Defendant. | Case No. 23-cv-02521-PHK<br><br>**ORDER (1) GRANTING STRIKE 3 HOLDINGS, LLC'S *EX PARTE* APPLICATION FOR LEAVE TO SERVE THIRD-PARTY SUBPOENA AND (2) ISSUING PROTECTIVE ORDER**<br><br>Re: Dkt. No. 8 |

Now before the Court is Plaintiff Strike 3 Holdings, LLC's ("Strike 3") *Ex Parte* Application for Leave to Serve a Third-Party Subpoena Prior to a Rule 26(f) Conference. [Dkt. 8]. Because Defendant John Doe, subscriber assigned IP address 71.202.128.203, ("Defendant Doe") has not been identified or served, no opposition has been filed. Having reviewed Strike 3's application and all supporting documents, the Court **GRANTS** the *ex parte* application and **ISSUES** a limited Protective Order for the reasons set forth below.

**BACKGROUND**

Strike 3 avers to be the assignee of copyrights registered with the U.S. Copyright Office to certain adult motion pictures distributed through various adult websites and DVD sales. *See* Dkt. 1 at 1, 6. Strike 3 indicates it is a Delaware corporation located in Camden, Delaware. *Id.* at ¶ 12.

Defendant Doe was named in the Complaint solely in connection with a specific Internet Protocol ("IP") address. [Dkt. 1]. "An IP address is a 'unique numerical address' assigned to every computer and can serve as its identifying characteristic." *United States v. Henderson*, 906 F.3d 1109, 1111 n.1 (9th Cir. 2018). The IP address is not a physical address but a unique identifier for

1   every computer or server connected to the Internet. *United States v. Forrester*, 512 F.3d 500, 510

2   n.5 (9th Cir. 2008). Strike 3 avers that it traced the IP address used by Defendant Doe's device to a

3   physical address in the Northern District of California using a geolocation tool developed by a

4   vendor called Maxmind, Inc. ("Maxmind"). [Dkt. 1 at ¶ 9; Dkt. 8 at 17]. Using Maxmind, Strike 3

5   avers that it identified Defendant Doe as a subscriber using assigned IP address 71.202.128.203.

6   *See* Dkt. 1 at ¶ 9; Dkt. 8 at 17. Further, Strike 3 alleges, from information obtained by Maxmind,

7   that Comcast Cable Communications, LLC ("Comcast Cable") is the internet service provider

8   ("ISP") for and owner of the IP address to which Defendant Doe subscribes. [Dkt. 8 at 20].

9         Defendant Doe is accused of using an internet-connected device and a file distribution

10  network called BitTorrent to download and distribute, through the internet, Strike 3's copyrighted

11  motion pictures without license or authorization. *See* Dkt. 1 at ¶¶ 18–44. Strike 3 alleges Defendant

12  Doe used BitTorrent for "downloading Strike 3's motion pictures as well as distributing them to

13  others[]" and "has been recorded infringing 31 movies over an extended period of time." *Id*. at ¶ 4.

14        Strike 3 alleges it is the owner and operator of an investigative technology tool called "VXN

15  Scan." *Id.* at ¶ 28. Using VXN Scan, Strike 3 allegedly established direct TCP/IP connections with

16  Defendant Doe's IP address while Defendant Doe was using BitTorrent. *Id*. at ¶ 30. According to

17  the Complaint, VXN Scan searches for and obtains ".torrent" files from the target device and then

18  downloads complete copies of the digital media files that correlate to those ".torrent" files to

19  determine whether those downloaded files are infringing copies of one of Strike 3's copyrighted

20  works. *Id*. at ¶¶ 25–33. Strike 3 further alleges, using metadata called the "Info Hash" value from

21  a .torrent file downloaded from Defendant Doe's device, VXN Scan then used the BitTorrent

22  network to download a portion of the same digital media file directly from Defendant Doe's device.

23  *Id*. at ¶ 36. A comparison of the digital media files apparently revealed Defendant Doe downloaded

24  and distributed copies of portions of Strike 3's copyrighted works without authorization. *Id*. at ¶¶

25  35–44.

26        Based on these forgoing allegations, on May 5, 2023, Strike 3 filed its Complaint against

27  Defendant Doe alleging copyright infringement under the Copyright Act. *See* Dkt. 1. On June 16,

28  2023, Strike 3 filed the instant *ex parte* application requesting leave to serve Comcast Cable with a

subpoena under Fed. R. Civ. P. 45. [Dkt. 8]. Strike 3 alleges Comcast has the ability to identify Defendant Doe through the IP address because Maxmind's geolocation service has identified, and the American Registry for Internet Numbers has allegedly confirmed, Comcast as the owner of the IP address. *Id.* at 20. Strike 3 represents that the requested subpoena will be limited to the name and address of the individual(s) associated with Defendant Doe's IP address of 71.202.128.203. *Id.*

**DISCUSSION**

**I. LEAVE TO SERVE AN EARLY, LIMITED SUBPOENA ON COMCAST.**

Pursuant to Rule 26(d)(1), a party may not seek discovery from any source prior to the parties' conference required by Rule 26(f). However, per Rule 26(d)(1), the Court has authority to allow discovery prior to the Rule 26(f) conference and thus outside this timing limitation. *See also* Fed. R. Civ. P. 26 Adv. Comm. Note 1993 Amendment ("Discovery can begin earlier if authorized . . . by local rule, order, or stipulation. This will be appropriate in some cases[.]").

The Court may authorize early discovery before the Rule 26(f) conference if the requesting party establishes "good cause" for the early discovery. *Semitool, Inc. v. Tokyo Electron Am. Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002). "Good cause may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs prejudice to the responding party." *Id.*

As with all discovery matters, "Rule 26 vests the trial judge with broad discretion to tailor discovery narrowly and to dictate the sequence of discovery." *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998). "And the court may also set the timing and sequence of discovery." *Id.* at 599 (citing Fed. R. Civ. P. 26(d)). Thus, the decision whether or not to grant early discovery under Rule 26(d) is within the Court's discretion. *Quinn v. Anvil Corp.*, 620 F.3d 1005, 1015 (9th Cir. 2010) ("We review district court rulings on discovery matters for abuse of discretion."). Further, a decision to deny early discovery under Rule 26(d) "will not be disturbed except upon the clearest showing that denial of discovery results in actual and substantial prejudice to the complaining litigant." *Med Vets, Inc. v. VIP Petcare Holdings, Inc.*, 811 F. App'x 422, 424 (9th Cir. 2020)

(quoting *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002)). In addressing a motion for expedited discovery, the District Court in *Med Vets* considered the following factors to determine whether good cause exists: (1) whether a preliminary injunction is pending; (2) the breadth of the discovery request; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made. *Med Vets, Inc. v. VIP Petcare Holdings, Inc.*, No. 18-CV-02054-MMC, [Dkt. 45] at *3 (N.D. Cal. Nov. 28, 2018) (quoting *Rovio Ent. Ltd. v. Royal Plush Toys, Inc.*, 907 F. Supp. 1086, 1099 (N.D. Cal. 2012)). The Ninth Circuit affirmed the District Court's decision on the request for expedited discovery. *Med Vets*, 811 F. App'x at 424.

A request for early discovery, such as the instant *ex parte* application, may arise particularly in a case involving alleged wrongful conduct in connection with use of the internet. As discussed by precedent:

> With the rise of the Internet has come the ability to commit certain tortious acts, such as defamation, copyright infringement, and trademark infringement, entirely on-line. The tortfeasor can act pseudonymously or anonymously and may give fictitious or incomplete identifying information. Parties who have been injured by these acts are likely to find themselves chasing the tortfeasor from Internet Service Provider (ISP) to ISP, with little or no hope of actually discovering the identity of the tortfeasor.
>
> In such cases the traditional reluctance for permitting filings against John Doe defendants or fictitious names and the traditional enforcement of strict compliance with service requirements should be tempered by the need to provide injured parties with an (sic) forum in which they may seek redress for grievances. However, this need must be balanced against the legitimate and valuable right to participate in online forums anonymously or pseudonymously. People are permitted to interact pseudonymously and anonymously with each other so long as those acts are not in violation of the law. This ability to speak one's mind without the burden of the other party knowing all the facts about one's identity can foster open communication and robust debate. Furthermore, it permits persons to obtain information relevant to a sensitive or intimate condition without fear of embarrassment. People who have committed no wrong should be able to participate online without fear that someone who wishes to harass or embarrass them can file a frivolous lawsuit and thereby gain the power of the court's order to discover their identity.
>
> Thus some limiting principals should apply to the determination of whether discovery to uncover the identity of a defendant is warranted.

*Columbia Ins. Co. v. seescandy.com*, 185 F.R.D. 573, 578 (N.D. Cal. 1999) (footnote omitted).

*Columbia* thus identified four factors to assist in determining whether a plaintiff has established good cause to conduct early discovery to identify Doe Defendants. Courts look to "whether the plaintiff (1) identifies the Doe defendant with sufficient specificity that the court can determine that the defendant is a real person who can be sued in federal court, (2) recounts the steps taken to locate and identify the defendant, (3) demonstrates that the action can withstand a motion to dismiss, and (4) proves that the discovery is likely to lead to identifying information that will permit service of process." *Zoosk Inc. v. Doe*, No. 4:10-CV-04545, 2010 WL 5115670, at *2 (N.D. Cal. Dec. 9, 2010) (citing *Columbia*, 185 F.R.D. at 578–80). Additionally, the Ninth Circuit has relied on the first and third factors as weighing in favor of granting early discovery to determine an unknown defendant's identity. *See, e.g., Young v. Transp. Deputy Sheriff I*, 340 F. App'x 368, 369 (9th Cir. 2009); *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980); *Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999).

Applying the *Columbia* factors here, the Court find that all four factors weigh in favor of the requested, limited early discovery. First, Strike 3 sufficiently alleges enough details to enable this Court to establish Defendant Doe is more than likely an actual individual who can be legally sued in federal court. Strike 3 alleges Defendant Doe downloaded Strike 3's copyrighted adult motion pictures and distributed them via the BitTorrent network. [Dkt. 1 at ¶¶ 7–8]. In order to obtain the movies, Defendant Doe had to specifically direct their BitTorrent client to download the copyrighted media files from a source on the internet. [Dkt. 8 at 16]. These allegations strongly suggest Defendant Doe is an identifiable person, a subscriber of the IP address identified by Strike 3, and thus a natural person who can be legally sued in federal court. *Strike 3 Holdings, LLC v. Doe*, No. 17-CV-07051-LB, 2018 WL 357287, at *2 (N.D. Cal. Jan. 10, 2018). Strike 3 alleges it traced each download back to Defendant Doe's IP address geolocated in the Northern District of California, thereby establishing a high likelihood that this Court has jurisdiction over Defendant Doe. [Dkt. 1 at ¶¶ 7–8].

Second, Strike 3 provides a detailed account of steps taken in its attempts to locate and identify Defendant Doe. Strike 3 alleges Defendant Doe downloaded and distributed Strike 3's

1  adult motion pictures using their IP address, and this IP address was allegedly traced back to the
2  Northern District of California. *Id.* Strike 3 allegedly used multiple methods available to them to
3  attempt to obtain Defendant Doe's identity, including web searches, reviews of numerous sources
4  of authority, and discussions with investigators and cyber security consultants. [Dkt. 8 at 18]. Strike
5  3 alleges that knowing Defendant Doe's IP address is not enough to establish Defendant Doe's
6  identity. *Id.* Strike 3's expert corroborates the inability to obtain Defendant Doe's identity solely
7  from the IP address. [Dkt. 8-1 at 22 (Declaration of Patrick Paige: "Based on [his] experience in
8  similar cases, Defendant's ISP Comcast Cable is the only entity that can correlate the IP address to
9  its subscriber and identify [the] Defendant.")]. The Court finds that Strike 3's efforts are sufficient
10 to satisfy this factor. *See Strike 3 Holdings, LLC v. Doe*, No. 18-CV-06938-WHO, 2019 WL
11 402358, at *2 (N.D. Cal. Jan. 31, 2019) (finding plaintiff's efforts sufficient, including web
12 searches of the IP addresses, references to other sources of authority, and a declaration from an
13 IT expert stating that the service provider was the only entity with the ability to identify the
14 defendant).

15 Third, Strike 3's Complaint could withstand a motion to dismiss because Strike 3 sufficiently
16 pleads copyright infringement under the Copyright Act. "To establish a prima facie case of direct
17 copyright infringement, [a party] must show that he owns the copyright, and that [the alleged
18 infringer] violated one of the exclusive rights set forth in 17 U.S.C. § 106." *Bell v. Wilmott*
19 *Storage Servs., LLC*, 12 F.4th 1065, 1071 (9th Cir. 2021). "In addition, direct infringement
20 requires the plaintiff to show causation (also referred to as 'volitional conduct') by the defendant."
21 *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 666 (9th Cir. 2017) (citing *Fox Broad. Co. v.*
22 *Dish Network L.L.C.*, 747 F.3d 1060, 1067 (9th Cir. 2013)). Section 106, of the Copyright Act,
23 grants copyright owners six exclusive rights: reproduction, preparation of derivative works,
24 distribution, public performance, public display, and digital audio transmission of the copyrighted
25 work. *Fahmy v. Jay-Z*, 908 F.3d 383, 393–94 (9th Cir. 2018).

26 Here, Strike 3 claims ownership of the copyrights for the adult movies that Defendant Doe
27 allegedly downloaded and subsequently distributed to others, all without obtaining authorization or
28 license from Strike 3. [Dkt. 1 at ¶ 46]. Strike 3 states that "by downloading the torrent files,
   Defendant [Doe] allegedly triggered a cascade of technical operations, allegedly making Defendant

1  [Doe] the 'proximate cause' of all of the violations of Plaintiff's copyrights." [Dkt. 8 at 14].
2  Without passing on the ultimate merits of this case, the Court finds that at this stage Strike 3's
3  Complaint could withstand a motion to dismiss because it has established a *prima facie* case for
4  copyright infringement.

5        Finally, Strike 3 has established that the requested, limited early discovery is likely to lead
6  to identifying information which will likely reveal the identity of Defendant Doe. In order to
7  establish this factor, a Plaintiff must "provide enough concrete details about who these individuals
8  are or how they eventually could be identified, located, and served." *Biesenbach v. Does 1*–3, No.
9  21-CV-08091-DMR, 2022 WL 17371156, at *4 (N.D. Cal. July 18, 2022). Strike 3 alleges that
10 Maxmind's geolocation service identified Comcast Cable as the owner of the IP address at issue
11 here, which was confirmed by the American Registry for Internet Numbers. [Dkt. 8 at 20]. Thus,
12 Strike 3 alleges that, as the ISP for Defendant Doe, Comcast Cable has information which would
13 identify Defendant Doe. [Dkt. 1 at ¶ 5]. Comcast Cable allegedly has in its possession the
14 subscriber's name and address, since some natural person signed up for and is paying Comcast Cable
15 for the internet service associated with the IP address at issue here. [Dkt. 8-1 at 22 (Declaration of
16 Patrick Paige: "Based on [his] experience in similar cases, Defendant's ISP Comcast Cable is the
17 only entity that can correlate the IP address to its subscriber and identify [the] Defendant.")]. Strike
18 3 claims Comcast Cable is in a position to provide this limited information in response to the
19 requested early subpoena, and after receipt of such, Strike 3 argues that it will be able to identify
20 Defendant Doe and ultimately serve process. [Dkt. 8 at 9]. "Even if the subscriber is not the proper
21 defendant, learning his or her identity may allow Strike 3 to work with the subscriber to locate that
22 individual." *Strike 3 Holdings*, 2019 WL 402358, at *3. Accordingly, the Court finds that Strike 3
23 has made a sufficient showing to satisfy this factor.

24       Further, applying the good cause factors identified by the District Court in *Med Vets* does
25 not lead to a different result. *Med Vets*, No. 18-CV-02054-MMC, [Dkt. 45] at *3, *aff'd Med Vets*,
26 811 F. App'x at 424. First, while a preliminary injunction is not pending, here the requested early
27 discovery is needed to allow the case to proceed against an unidentified defendant. Second, Strike
28 3 commits that the breadth of the proposed discovery request is limited and narrow: the proposed

7

1  subpoena will only seek from Comcast Cable the name and address of the person who is the
2  subscriber for the IP address at issue.  Third, the purpose for requesting the expedited discovery has
3  been discussed above:  Strike 3 alleges it needs the discovery in order to be able to identify the
4  person who is Defendant Doe and thus to allow this case to go forward.  Fourth, the burden on the
5  target of the discovery to comply with the requests appears cabined by Strike 3's commitment to
6  seek only limited discovery from Comcast Cable and not free-ranging discovery to try to identify
7  Defendant Doe.  Finally, Strike 3's request is presented at the outset of this case and thus far in
8  advance of the typical discovery process, but this is by necessity since Strike 3 alleges it needs to
9  identify Defendant Doe in order to pursue the case beyond this filing stage.  In sum, in light of the
10 District Court *Med Vets* factors, the Court finds that Strike 3 has demonstrated good cause
11 warranting the requested, early and limited discovery.

12 In light of the facts and evidence presented to the Court and applying these facts to the legal
13 standards for early discovery, the Court finds that Strike 3 has demonstrated good cause warranting
14 the requested early, limited discovery (specifically, the subpoena to Comcast Cable) to determine
15 the identity of Defendant Doe.  Here, in consideration of the administration of justice, the need for
16 the requested discovery (to identify the defendant and allow the case to go forward) outweighs the
17 prejudice to Comcast Cable (the target of the requested discovery) in light of the limited and narrow
18 nature of the requested subpoena.  *Semitool*, 208 F.R.D. at 276.  Indeed, here the copyright
19 infringement claims are supported by evidence of technical investigation resulting in multiple
20 alleged instances of copyright infringement linked to the one, identified IP address.  *Cf. id.* ("It
21 should be noted that courts have recognized that good cause is frequently found in cases involving
22 claims of infringement and unfair competition.").  Therefore, the Court **GRANTS** leave to serve the
23 limited, proposed third-party subpoena on Comcast Cable prior to the Rule 26(f) conference in this
24 matter.

25

26 **II.    PROTECTIVE ORDER**

27 Courts have discretion to issue a protective order *sua sponte* for "good cause" in order to
28 "protect a party or person from annoyance, embarrassment, oppression, or undue burden or

8

expense[.]" Fed. R. Civ. P. 26(c). To establish "good cause," there must be a demonstration of specific prejudice or harm that would result from the absence of a protective order. *Phillips ex rel. Ests. of Byrd v. General Motors Corp.*, 307 F.3d 1206, 1210–11 (9th Cir. 2002). "[B]road allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test [for good cause]." *Beckman Indus. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992). The Ninth Circuit permits parties to use pseudonyms "when anonymity is necessary 'to preserve privacy in a matter of sensitive and highly personal nature[.]'" *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1068 (9th Cir. 2000) (balancing "the need for anonymity against the general presumption that parties' identities are public information and the risk of unfairness to the opposing party").

Here, good cause exists to protect the privacy and rights of the person who will presumably be identified by Comcast (whether that person is Defendant Doe or a third party who pays for the internet service from Comcast for the subject IP address). In this situation, anonymity is necessary to preserve privacy and protect the person to be identified by Comcast from annoyance and embarrassment because of the sensitive and highly personal nature of adult motion pictures. *See Strike 3 Holdings*, 2018 WL 357287, at *3 (stating that "[a]n allegation that individually illegally downloaded adult motion pictures likely goes to matters of a sensitive and highly personal nature, including one's sexuality"). Further, because Comcast Cable's information produced in response to the requested subpoena may not lead to the proper subscriber, it is necessary to protect the identify of any potential and innocent third parties. *Strike 3 Holdings, LLC v. Doe*, No. 23-CV-01985-AMO, 2023 WL 3483288, at *2 (N.D. Cal. May 15, 2023).

Considering the subscriber's potential status as an innocent third party and the sensitive and personal nature of the subject matter of the suit for both the subscriber and Defendant Doe, the Court issues a limited protective order. Any information produced in response to the requested subpoena to Strike 3 by Comcast Cable will be treated as confidential until Defendant Doe (or any other third party identified by Comcast) has the opportunity to file a motion with the Court to proceed in the litigation anonymously and the Court has had a chance to rule on that motion. Additionally, a protective order of this nature would be comporting with Strike 3's admitted policy of respecting

9

privacy in these matters and is not opposed by Strike 3 (but rather welcomed by Strike 3). [Dkt. 8 at 21].

Accordingly in light of the showing of good cause, and in order to preserve the privacy of (and protect from annoyance and embarrassment to) Defendant Doe and any other third parties whose information may be produced by Comcast Cable, the Court **ISSUES** a protective order to the limited extent that any information produced by Comcast Cable in response to the requested subpoena will be treated as confidential by all parties in this matter. That confidential treatment shall continue until the Court rules upon any motion filed by Defendant Doe (or any other impacted third party) to continue confidential treatment of that information and, in the case of Defendant Doe, to be allowed to proceed in this litigation anonymously. *See Strike 3 Holdings*, 2018 WL 357287, at *3 (citing *IO Grp., Inc. v. Does 1–19*, No. C 10-03851 SI, 2010 WL 5071605, at *2 (N.D. Cal. Dec. 7, 2010)). If Defendant Doe or any other third party fails to file a motion for leave to proceed anonymously within 30 days after receiving notice from Strike 3 that Comcast Cable has produced their information, Strike 3 may file a motion seeking withdrawal or modification of the limited protective order. *Cf. Strike 3 Holdings*, 2018 WL 357287 at *3 (citing *IO Grp.*, 2010 WL 5071605, at *3).

Considering the potential social ramifications of a public accusation associated with illegally obtaining adult films, if Defendant Doe or the subscriber identified by Comcast "includes identifying information within his or her request to proceed anonymously, the Court finds good cause to order the papers filed under seal until it has opportunity to rule on the request." *Strike 3 Holdings*, 2018 WL 357287, at *4 (citing *IO Grp.*, 2010 WL 5071605, at *3). In this situation, "the [C]ourt will direct the Doe [D]efendant [or other movant] to submit a copy of the under-seal request to Strike 3 [Holdings] and will ensure that Strike 3 has time to respond." *Strike 3 Holdings*, 2018 WL 357287, at *4.

## CONCLUSION

Accordingly, this Court **GRANTS** Strike 3's *ex parte* application for leave to serve a limited, early third-party subpoena to Comcast Cable as discussed herein. The Court **ISSUES** a limited

10

Protective Order as discussed herein pursuant to Fed. R. Civ. P. 20(c).

**IT IS SO ORDERED.**

Dated:  August 1, 2023

PETER H. KANG
United States Magistrate Judge